UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SWEETENERS PLUS, LLC (d/b/a ingredientsPLUS),<br><br>         Plaintiff,<br><br>        v.<br><br>MARK RUDOLPH and DERRICK WOLFE TRUCKING, LLC,<br><br>         Defendants. | **ELECTRONIC DISCOVERY AGREEMENT AND ORDER**<br><br>Case No. 25-cv-06845 (JPO) |

This Agreement and Order (the "Protocol") will govern how the parties manage electronic discovery in the above-captioned case.[1]

## I.  SEARCH PROTOCOL

<u>Identification of Custodians and Data Sources.</u>  In order to reduce the burden of searching the electronic files and data sources only tangentially related to the subject matter of the claims and defenses in this litigation without overlooking production of relevant and responsive documents, the Parties agree that the identification of individual and departmental custodians and data sources using reasonable, good faith judgment, is an appropriate step to reasonably identify potentially responsive documents. The Parties agree to meet and confer regarding the scope of preservation as required by Rule 26(f)(3)(C) of the Federal Rules of Civil Procedure, and to exchange lists of custodians and data sources to preserve at the outset of discovery in an attempt

---

[1] The Parties incorporate by reference the provisions of the Confidentiality Stipulation and Protective Order to be entered by the Court contemporaneously (the "Protective Order"). For the avoidance of doubt, nothing in this Protocol will supersede or alter the Protective Order concerning protection of confidential or otherwise sensitive information that may be entered by the Court in these proceedings.

to avoid a protracted dispute over whether all appropriate custodians and data sources were searched.

Protocol For Agreeing on Use of Search Filters.  The Parties agree that the application of search terms is an appropriate-but not mandatory-step to reasonably identify potentially responsive documents or to cull ESI once the material is collected from the appropriate data source. Each Party may take reasonable steps to develop search terms to identify potentially responsive documents including undertaking reasonable steps to test and validate the recall (how many documents determined to be responsive that were actually identified using search terms) and precision (how precise the search terms are, measuring how many non-relevant documents were also search term hits, or how many non-relevant documents one would have to review to find the relevant documents in the document universe) of the terms.  The Parties may use additional methods to cull documents for review (*e.g.*, technology-assisted review, predictive coding) subject to their disclosure.

Search Term Testing and Validation.  While there are potentially numerous ways to reasonably test and validate search terms, a Producing Party may test the efficacy of proposed search terms by assessing hit reports and/or by sampling individual query results or cumulative results, and during the meet and confer process may support the exclusion of disputed search terms by reference to such statistical hit reporting and/or intelligence garnered from such sampling, provided, however, that if a Producing Party relies upon such statistical hit reporting and/or intelligence for the exclusion of certain search terms it must first provide to the Requesting Party the underlying "hit rate data" (i.e., total number of documents searched, number of aggregate hits, number of unique hits, etc.) relating to such search terms.

Search and Production.  The fact that a document may have been retrieved or identified by application of search terms shall not prevent any Party from withholding from production such document for privilege or other permissible objection.  Notwithstanding the foregoing, to the extent any Party identifies responsive ESI or documents not identified by the use of search terms or filters, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests and privileged documents will be logged to the extent required by this agreement.

Exchange of Search Information.  Parties are not required to exchange search terms. The Producing Party has an independent duty to refine and calibrate search terms that will find documents responsive to document requests, and to validate that its search terms are reasonably identifying responsive material, such as by evaluating the recall of the search terms (where recall is the percentage of all responsive documents in the dataset which are returned in search results).  This should include a method of validating documents that would not hit on search terms, including documents that have no readable text, to verify whether responsive information has been missed that should be reasonably captured by search terms and have not otherwise been identified using non-search term methods (for example, folder name or file name searches).

1. The Receiving Party may make prompt, reasonable requests that the Producing Party test select search terms. Any proposed search terms shall be narrowly tailored to particular claims and defenses.  Within seven days of receiving proposed search terms from the Requesting Party, the Producing Party shall perform test searches for the proposed search terms, and inform the Requesting Party whether it objects to any of the proposed terms.

2.  If the Parties are unable to resolve their disputes over search terms through the meet and confer process, the Parties will submit the dispute to the Court.  The Producing Party may, but is not required to, disclose statistical sampling results and/or the number of documents containing the disputed term or combination of terms.

## II.    PRODUCTION OF HARD-COPY DOCUMENTS

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original document contains color, and the color is necessary to understand the meaning or content of the document, the parties reserve the right to request that the affected documents be re-produced. Multi-page OCR text for each document should also be provided.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. If the settings on productions of hard-copy documents under this Section render the meaning or content of certain documents difficult or impossible to understand, the parties reserve the right to request that the affected documents be re-produced; to the extent there is a dispute about the necessity of reproduction of any hard-copy documents for quality issues, the parties agree to meet and confer in good faith.

## III.    PRODUCTION OF ESI

### A.    Format

Except where otherwise noted in this section, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images.  Spreadsheet and presentation-type files, audio and video files, photo or graphic images, and documents with tracked changes in the

metadata shall be produced in native format.  Text messages, Facebook messages, WhatsApp, Slack, iMessage, Teams, G-Chat, and similar messaging applications ("Short Message Communications"), where applicable, will be produced as TIFF images of the Relativity Short Message Format ("RSMF") with all available metadata and attachments.  Except for messages that contain privileged content, Short Message Communications will be produced as complete communications, separated into 12- or 24-hour increments.  To the extent Short Message Communications cannot be provided in TIFFs of RSMF, the parties shall meet and confer on the appropriate metadata fields and format of production.

The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

TIFFs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document, subject to redactions and/or withholding of documents permitted by this Protocol and the parties' Protective Order.  For example, TIFFs of email messages will include the BCC line, and documents will display comments and hidden content.  If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.  If the settings on productions of ESI under this Section render the meaning or content of certain documents difficult or impossible to understand, the parties reserve the right to request that the affected documents be re-produced; to the extent there is a dispute about the necessity of reproduction of any hard-copy documents  for quality issues, the parties agree to meet and confer in good faith.

Spreadsheets, such as Excel files, and PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.

Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. For all Documents produced in native format, a TIFF placeholder indicating that the Document was provided in native format must accompany the database record. The parties retain the right to request that additional documents or classes of documents, not already identified within this protocol, should be produced in native format; to the extent a party believes that a document or class of documents not already identified in this paragraph should be produced in native format, the parties agree to meet and confer in good faith.

### B.      De-Duplication and De-NISTing

Each party shall remove exact duplicate documents based on MD5 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

The parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but shall not use email thread suppression to eliminate (a) the ability of a requesting party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

De-duplication will be applied within or across custodians or the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a

semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

ESI may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the parties.

### C.    Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto, to the extent already in existence and reasonably accessible or available.  The load file will be in an Opticon compatible format.

### D.    Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E.    Attachments

The parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any family member or part thereof that must be withheld or redacted on the basis of privilege.  The attachments will be produced sequentially after the parent communication.

The Parties will make relevancy and production determinations for hard copy documents at the document level.  The attachments will be produced sequentially after the parent communication.

### F.    Compressed Files Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### G.    Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties agree to meet and confer regarding methods of production.

### H.    Decryption of Production Data

To the extent there is password or other security protection for a document in a production preventing the producing party from viewing or accessing the contents of the document, the producing party shall produce a slip sheet stating "Technical Issue" (or other similar indicator of a technical problem) and provide the metadata required by Table 1, attached hereto, to the extent it can be reasonably extracted from the file in its encrypted form. If a receiving party believes there is a need to remove the password or other security protection from a document, the receiving party can request it based upon a specific showing of need, and if the producing party has the practical ability to remove the password or other security protection from a document, the parties agree to meet and confer in good faith regarding the request.  If the parties cannot resolve their dispute, the objecting party may initiate the Court's process for resolving discovery disputes.

### I.    Encryption of Data in Transit

Productions will be delivered via secure electronic file transfer protocol system.  To maximize the security of information in transit, any media on which documents being produced are transmitted may be encrypted by the producing party using commercially reasonable

encryption technology (*e.g.*, 7-Zip technology).  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

### J.   Redactions

A party may only use redactions to protect for privilege and personal identifying information ("PII") of any person, including but not limited to Social Security numbers, bank account information, and personal health information, but shall redact no more than is necessary to protect the privileged or PII information.  Each redaction on a document shall be endorsed with the word "redacted," along with the basis for such redaction on the face of the document.  (*e.g.*, "Redacted – Attorney Client Privilege").  To the extent that a receiving party contends that such PII is relevant to the issues presented in this litigation, the parties agree to meet and confer regarding the production of such PII in a minimally invasive manner. For the avoidance of doubt, documents may not be redacted for relevance.

If documents that the parties have agreed to produce in native format need to be redacted, the parties will implement redactions while ensuring that proper formatting and usability are maintained.  Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

## IV.   PRIVILEGE LOGS

The Parties agree that, for Documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing Party will provide a log or logs, either by category or line-by-line, that comply with Federal Rule of Civil Procedure 26 and Local Civil Rule 26.2 and contain the following information:

a.  a privilege ID number to identify each log entry or category / for redacted Documents, the Bates Numbers assigned to the Documents;

b.  the number of Documents being withheld in connection with a log entry;

c.  if applicable, in a line-by-line log, a family ID number to identify when different log entries are a part of the same family;

d.  a statement sufficient to establish a prima facie case for the claim of privilege or other immunity from disclosure, including an indication of whether it is being withheld on the basis of the attorney-client privilege and/or work product protection;

e.  the type of Document(s);

f.  the date or date range of the Document(s);

g.  the Document(s)'s authors, recipients, and all persons copied on the Document(s) (including, but not limited to, all persons blind copied) and, if not apparent from their domain name, their employer;

h.  the identification of any attorneys and the name of their employer;

Privilege logs shall be provided in searchable formats and shall be exchanged (1) 60 days prior to the deadline for fact discovery and (2) an updated log provided in connection with the completion of the parties' document production prior to depositions, unless the parties agree otherwise or the Court so orders.

Date: March 3, 2026

| /s/ Victoria V. Corder | /s/ Ryan T. Biesenbach | /s/ Elyse S. Schindel |
|---|---|---|
| Victoria V. Corder | Ryan T. Biesenbach | Elyse S. Schindel |

| | | |
|---|---|---|
| NORTON ROSE FULBRIGHT US LLP | UNDERBERG & KESSLER LLP | LONDON FISCHER LLP |
| Victoria V. Corder | Ryan T. Biesenbach | Elyse S. Schindel |
| Allison Silverman Lamb | Paul F. Keneally | 59 Maiden Lane |
| 1301 Avenue of the Americas | 300 Bausch & Lomb Place, | 40th Floor |
| New York, New York 10019 | Rochester, NY 14604 | New York, New York 10038 |
| Tel:    (212) 408-5457 | Tel:    (585) 258-2800 | Tel:    (212) 972-1000 |
| Fax:    (212) 318-3400 | Fax:    (585) 258-2821 | Fax:    (212) 972-1030 |
| victoria.corder@nortonrosefulbright.com | rbiesenbach@underbergkessler.com | eschindel@londonfischer.com |
| allison.lamb@nortonrosefulbright.com | pkeneally@underbergkessler.com | *Counsel for Derrick Wolfe Trucking, LLC* |

*Counsel for Sweeteners Plus, LLC (d/b/a ingredientsPLUS)*    *Counsel for Mark Rudolph*

IT IS SO ORDERED.

J. PAUL OETKEN
United States District Judge


So ordered.

Date: March 4, 2026

## TABLE 1: METADATA FIELDS[2]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO / PRODBEG | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO / PRODEND | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| CONFIDENTIALITY DESIGNATION | Confidential; Highly Confidential | If document assigned confidentiality by Counsel |
| PGCOUNT | Numeric | The number of pages in a document (image records) |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| FILE LAST ACCESS DATE | MM/DD/YYYY | The date the document was last accessed. |
| FILEPATH | /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| FILEPATH-DUP | /JSmith.pst/Inbox/Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |
| FILE SIZE | Numeric | The file size of a document (including embedded attachments). |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a |

---

[2] The parties will meet and confer regarding the appropriate metadata fields to be produced for ESI that does not conform to the metadata fields listed in Table 1.

| | | |
|---|---|---|
| | | copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| ATTACHMENT NAME | Attach1.doc | The original file name of an attached document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, GMT, UTC, etc | The time zone the document was processed in. |
| TIMEZONE OFFSET | -6.00, -5.00, +5:30 | Where processing was performed in a consistent time zone (UTC), this field records the offset from UTC in hours and minutes. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |